[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff commenced this action for dissolution of marriage with a complaint dated October 18, 2000. The return date was November 28, 2000.
Both parties reside in Hartford, Connecticut. Appropriate abode service was made upon the defendant on October 25, 2000. The defendant filed a pro se appearance on November 28, 2000 and an answer and "counterclaim" (cross-complaint) on March 3, 2001. The court finds that it has jurisdiction in this matter.
A limited contested dissolution trial was held before the undersigned on September 21, 2001 and October 11, 2001. The plaintiff was represented by counsel, and the defendant proceeded pro se.
The court has carefully considered all of the evidence introduced at trial and the parties' financial affidavits. The court finds that the facts recounted below were proven by a preponderance of the evidence at trial.
 FACTUAL FINDINGS
The plaintiff married the defendant, whose name was then Touria Ann Pitts, on November 21, 1993 in Hartford. Both of the parties had resided continuously in the state of Connecticut for at least one year prior to the commencement of this action.
No minor children were born to the defendant wife since the date of this marriage. Neither of the parties have received any assistance from the state of Connecticut, or any of its municipalities, since the date of the marriage.
The plaintiff is a citizen of Jamaica who came to the United States in 1987.[1] He was an agricultural worker in Vermont from 1987-1994. In 1994, he moved from Vermont to Connecticut where his father resides.
After his relocation in Hartford, the plaintiff was introduced to the CT Page 14690 defendant by the defendant's son. The defendant assisted the plaintiff with various immigration filings before and after the marriage.
The plaintiff worked for local janitorial services from 1994-1998. During 1998 and 1999, he was self-employed as the proprietor of his own cleaning business. At that time, he had contracts to clean several area business establishments. Since 1999, the plaintiff has been employed as a custodian by the City of Hartford.
The plaintiff earns gross weekly wages of $561.00 and net weekly wages of $425.99 from his employment with the city. He has recently become a permanent employee of the City of Hartford and qualified for health insurance benefits through that employment. The plaintiff is a member of the Connecticut Municipal Employees Retirement System (CMERS), but his pension benefits will not vest until October 2004.
The defendant is currently unemployed. Per her October 4, 2001 financial affidavit, she receives $75.00 per week in unemployment compensation benefits, and $16.00 per week in child support payments for the child of another relationship.
The defendant worked sporadically during the marriage as a certified nurses aid. The defendant completed a nurses' aid certification course through Greater Hartford Community College, and is registered by the State of Connecticut Department of Health Services on their Nurses Aid Registry (See defendant's Exhibit U).
During the course of the marriage, the defendant also worked briefly in her husband's cleaning business, and earned income as a daycare provider.
The defendant did not introduce into evidence any of the W-2 forms which she received during the course of the marriage. The court is unable to make findings as to the exact amount of time that the defendant was employed during the marriage, or the amount of the income which she contributed to the family unit. The defendant is not disabled and the evidence did pot suggest any reason why she could not currently obtain employment as a certified nurses aid.
Because the plaintiff has difficulty reading and writing, the defendant paid all of the bills and exclusively handled all of the parties' financial matters during the marriage. The plaintiff testified credibly that he would give his salary to his wife, who would in turn pay the bills from the family's checking account.
For approximately twenty-two (22) years, the defendant has had an CT Page 14691 ownership interest in the fifty-two (52) unit cooperative apartment building where she resides. The present value of that in crest was not listed on the defendant's financial affidavit, but the plaintiff made no claim to any interest which the defendant might have in that real estate.
Neither of the parties own any other major assets.
In April, 2000, the parties purchased a 1997 Plymouth Voyager van. Each party contributed equally to the down payment on that vehicle. After the couple separated, the defendant stopped making the monthly payments on the van. The creditor repossessed that vehicle and recently sold it at auction for an undisclosed amount. The parties are jointly and severally liable for the balance owed on the loan for the van. The amount due on that loan is $14,680.00 (plus repossession costs), minus the proceeds realized at the auction sale.
The defendant's financial affidavit reflects extensive credit card and charge account debts which total $11,207.71. However, the defendant also introduced into evidence statements for various debts, not all of which are reflected on her financial affidavit. (See defendant's Exhibits I, J, K, L and N . . .
The court finds that the bulk of the debts which are listed on the defendant's financial affidavit and reflected in the foregoing exhibits were accrued during the course of the marriage for the benefit of both parties.
The defendant has outstanding medical bills which were acquired during the marriage when neither party had medical insurance. These bills are set forth in defendant's Exhibit J, but are not listed on the defendant's financial affidavit. Some of the bills are related to an ectopic pregnancy which the defendant experienced during the marriage.
Although this has been a relatively short-term marriage, the parties' relationship has been troubled for several years.
Each party has alleged acts of intolerable cruelty by the other. The substantial weight of the evidence suggests that the parties were basically incompatible, and frequently argued about money. In addition, toward the end of the marriage, the defendant engaged in erratic and hostile behavior toward the plaintiff.
After several brief prior separations, the parties separated for the final time in May, 2000. In August, 2000 the defendant assaulted the plaintiff at a Hartford restaurant after she encountered him there and CT Page 14692 argued with him about money. The plaintiff sustained a head laceration which required stitches. The defendant was subsequently convicted of assault, placed on probation, and ordered to make restitution to her husband for his unreimbursed medical expenses.
In April, 2001, the defendant sought a temporary restraining order against the plaintiff at the Hartford Superior Court. (See docket no. FA-01-0106068). In the affidavit for a restraining order, the defendant claimed that she had sustained a fractured ankle and wrist after being assaulted by the defendant. These allegations were later found to be unsubstantiated, and the court (Caruso, J.) dismissed the ex parte temporary restraining order on April 17, 2001.
 ORDERS
The court has carefully considered all of the evidence adduced at trial, and the parties' financial affidavits. The court has also considered, and applied to the facts of this case, all of the provisions of Connecticut General Statutes §§ 46b-81 and 46b-82.
The court finds that the marriage of the parties has broken down irretrievably without any prospect of reconciliation. Accordingly, a decree dissolving the marriage for that reason may enter.[2]
No alimony is awarded to either party.
The defendant shall retain and exclusively own all her right, title and interest in the cooperative apartment at 290 Capon Street, A-45.
The defendant shall also exclusively own the Webster bank account listed on her financial affidavit, and all of her household furnishings.
The plaintiff shall exclusively own the Fleet checking account listed on his financial affidavit, his household furnishings, and any monies in his unvested pension.
The plaintiff shall assume, pay, and hold the defendant completely harmless from the debt of $14,618.32 (plus any repossession cost, minus any proceeds from the auction sale of said vehicle). The plaintiff shall also pay and hold the defendant harmless from the debt of $1,800.00 which he incurred in March, 2001 for household furnishings with Rent-A-Center.
In addition to the foregoing, the plaintiff shall pay 40% of the following debts listed in the defendant's name:
1. Bank One ($1,762.41); CT Page 14693
2. First National credit card ($497.96);
3. AAA/PNC ($880.35);
4. CARS ($1,164.50);
5. West Capital Financial Services ($1,956.35);
6. Northland Group, Inc. ($1,446.14)
7. Sears ($2,000.00);
8. Security Pacific ($1,500.00)
The defendant shall pay the remaining 60% on each of the aforesaid debts, plus 100% of any amount which may be owed on the VISA Classic credit card.[3]
The plaintiff shall also pay 50% of the following medical expenses incurred by the defendant:
1. New Britain General ($271.43);
2. Hartford Hospital ($149.47);
3. Saint Francis Hospital ($265.93);
4. Saint Francis Hospital ($126.12)
5. Gynecological Associates ($60.00)
6. Saint Francis Hospital ($75.25);
7. Saint Francis Hospital ($77.90);
8. Saint Francis Hospital ($466.82)
The defendant shall pay the remaining 50% of the aforesaid medical expenses.
In light of the apportionment of debt made by the court above, the defendant shall pay and hold the plaintiff harmless from 100% of the following debts:
1. Filenes ($918.93); CT Page 14694
2. Providian VISA ($377.66);
3. All of the utility bills set forth in defendant's Exhibit K;
4. All of the automobile and property tax obligations set forth in defendant's Exhibit L.
The defendant is ordered to submit to plaintiff's counsel, within thirty (30) days of the date hereof, all necessary documentation concerning all of the bills for which plaintiff has been obligated by these orders, including, but not limited to, account numbers for each debt, and the name and address of each creditor.
SO ORDERED.
BY THE COURT
Dyer, J.